Date Signed:
December 12, 2013



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAUI INDUSTRIAL LOAN & FINANCE COMPANY, INC.,<br><br>                Debtor. | Case No.: 10-000235<br>Chapter 7 |
| DANE S. FIELD,<br><br>                Plaintiff,<br><br>    vs.<br><br>DENNIS I. HINAHARA and MYRA S. HINAHARA,<br><br>                Defendants. | Adv. Pro. No. 12-90009<br><br><br><br><br>Re: Docket No. 73 |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

In this adversary proceeding, the trustee of a company that operated a Ponzi scheme seeks partial summary judgment on his claims to avoid and recover certain transfers to the defendants. For the reasons set forth below, I will grant partial summary judgment in favor of the trustee on the trustee's case in chief, but deny summary judgment on the defendants' affirmative defense of good faith and value.

(Because the parties want an early trial date, my discussion will be abbreviated.)

**I.      The Trustee Has Proven the Elements of Fraudulent Transfers**

In order to recover, the trustee must prove that Maui Industrial Loan & Finance Co., Inc. ("MFC") (1) had creditors and (2) made one or more transfers to or for the benefit of defendants Dennis and Myra Hinahara (3) with actual intent to defraud a creditor. Haw. Rev. Stat. § 651C-4(a)(1).

There is no dispute that MFC has many creditors.

The trustee offers a summary of checks and related documents showing transfers of more than $1 million to the Hinaharas. Dkt. 74-2. I will overrule the Hinaharas' objection to the admission of these documents. The summary of the numerous underlying documents is admissible under Fed. R. Evid. 1006. The underlying checks and related documents are self-authenticating under rule 902(9) and are "verbal acts" that are not hearsay.

Mr. Kimura's admission in his plea agreement that he ran a Ponzi scheme with actual intent to defraud his and MFC's creditors is conclusive proof of his actual fraudulent intent. *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008). A certified copy of the plea agreement is self-authenticating under Fed. R. Evid. 902(4). A copy of the certified copy is also admissible under rules 1003 and 1005. The plea agreement is excepted from the hearsay rule by rule 804(b)(3).

The Hinaharas object that the plea agreement does not specify the time period of the Ponzi scheme. This is incorrect. Mr. Kimura admitted that the scheme began "in or about the late 1980's," which is before the earliest of the

U.S. Bankruptcy Court - Hawaii   #12-90009   Dkt # 81   Filed 12/12/13   Page 2 of 9

transfers which the trustee challenges.

The Hinaharas do not dispute that they are "initial transferees" within the meaning of section 550(a)(1) of the Bankruptcy Code.

## II.     The Hinaharas' Affirmative Defense of Good Faith and Value

The Hinaharas have an affirmative defense if they prove that they took the transfers in good faith, and that they gave reasonably equivalent value for the transfers. Haw. Rev. Stat. § 651C-4(a)(1). The Hinaharas bear the burden of establishing both of these elements. Haw. Rev.Stat. § 651C-8(a); *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990).

### A.    Good Faith

A person does not take in good faith when, looking at objective facts, the circumstances would alert a reasonable person to the debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose. *Id*.

In his declaration, Mr. Hihahara testified that, until late 2009, he and his wife never knew or suspected, and never had any reason to suspect, that Mr. Kimura was operating a Ponzi scheme or was defrauding them. The trustee attempts to counter this evidence in three ways.

First, the trustee argues that the Hinaharas and Mr. Kimura were partners in various business ventures and that Mr. Kimura's knowledge of his Ponzi scheme is imputed to the Hinaharas as a matter of law.

The trustee's premise is correct: the Hinaharas and Mr. Kimura owned

3

various properties as partners.  Under the Revised Uniform Partnership Act ("RUPA") enacted in Hawaii, a partnership is the association of two or more persons to carry on as co-owners a business for profit.  Hawaii Rev. Stat. § 425-109(a).  A partnership exists where the parties have agreed to share in the profits of a business. *Id.*; *see also id*. § 425-109(c).  Mr. Hinahara's testimony establishes these elements.

But the trustee's legal inference is not correct.  "A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification *by the partnership*, except in the case of a fraud on the partnership committed by or with the consent of that partner." *Id*. §425-102(f) (emphasis added).  A partnership is an entity distinct from the partners. *Id.* § 425-108.  So one partner's knowledge is imputed to the partnership, but not to the other partners.  (In addition, this record leaves open the questions whether (a) Mr. Kimura defrauded some of his partnerships with the Hinaharas, (b) Mr. Kimura's operation of a Ponzi scheme through MFC was "a fact relating to the partnership[s]" with the Hinaharas, and (c) Mrs. Hinahara was a partner in any of the partnerships.)

The trustee cites cases holding that "[w]ell established concepts of partnership doctrine impute the knowledge and actions of one partner to all others." *Friend v. H. A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir. 1969); *see also Winkelbach v. Honolulu Amusement Co.*, 20 Haw. 498, 502 (1911).  Almost all of these cases were decided before the enactment of RUPA, at a time when it was not

4

U.S. Bankruptcy Court - Hawaii   #12-90009   Dkt # 81   Filed 12/12/13   Page 4 of 9

clear whether partnerships were an aggregate[1] of the partners or a separate legal entity.[2] Neither the letter nor the theory of Hawaii's RUPA support the trustee's imputation argument.

Second, the trustee points out that the Hinaharas and Mr. Kimura were involved in several corporations, and argues that, in a close corporation, the knowledge of one director is imputed to other directors. The treatise which the trustee cites for this proposition observes that, in most cases, there is no imputation of knowledge among directors.

> While there is authority to the effect that knowledge of one officer of a corporation that is imputed to the corporation is also to be imputed to one of the directors who was the president, so as to affect him or her as an individual, the soundness of this rule as applied to corporate officers generally, without regard to the nature of the corporation or character of the transaction, has been questioned, and the view has been set forth that the knowledge of a corporation derived by virtue of the relationship between itself and its officer or agent is not imputed to another officer or agent as an individual. In the case of close corporations, equity may require individuals to be charged with the knowledge formally given to other officers, particularly where all of the officers are closely related and the free transfer of knowledge is likely.

3 Fletcher Cyc. Corp. § 837 (footnotes omitted). The trustee relies on a limited exception stated by the same treatise:

---

[1] At common law, and under the "aggregate theory," partners were considered co-principals in a mutual agency relationship. Gary S. Rosin, *The Entity-Aggregate Dispute: Conceptualism and Functionalism in Partnership Law*, 42 Ark. L. Rev. 395, 430-31 (1989). RUPA, by contrast, explicitly embraces the "entity theory." *Infra*, n. 2.

[2] J. William Callison & Maureen A. Sullivan, P'ship Law and Practice: Gen. and Ltd. P'ships, § 3:1 (2013); *see* the Official Comments to Rev. Unif. P'ship Act § 201 (2013-14) ("RUPA embraces the entity theory of the partnership. In light of the UPA's ambivalence on the nature of partnerships, the explicit statement provided by subsection (a) is deemed appropriate as an expression of the increased emphasis on the entity theory as the dominant model.")

5

U.S. Bankruptcy Court - Hawaii    #12-90009    Dkt # 81    Filed 12/12/13    Page 5 of 9

> In the case of close corporations, equity may require individuals to be charged with the knowledge formally given to other officers, particularly where all of the officers are closely related and the free transfer of knowledge is likely.

*Id.* In all of the cases which the treatise cites in support of this proposition, the directors were also husband and wife. In other words, knowledge is not imputed among directors unless there is an additional relationship among the directors, such as marriage, that makes it likely that they have shared their knowledge. The current record does not establish that there was such a close relationship between the Hinaharas and Mr. Kimura. (There are also questions concerning whether Mr. Kimura's knowledge of the MFC Ponzi scheme was sufficiently related to the corporations' businesses to warrant imputation, and whether any knowledge should be imputed to Mrs. Hinahara on that basis.)

Third, the trustee argues that there were many "red flags" which should have alerted the Hinaharas to Mr. Kimura's lack of good faith. It seems clear that, at the outset of their friendship, the Hinaharas had no reason to distrust Mr. Kimura. Mr. Hinahara's deposition, which is more nuanced and particular than his declaration, suggests that a reasonable person in his position might have become suspicious of Mr. Kimura at some point. For example, Mr. Hinahara testified that, in 2003 or 2004, Mrs. Hinahara became concerned that Mr. Kimura was not paying them their share of the profits from one of the jointly owned properties. This might have led a reasonable person to suspect that Mr. Kimura was insolvent and was robbing Peter (the Hinaharas) to pay Paul (other creditors). The record is not sufficient to

U.S. Bankruptcy Court - Hawaii   #12-90009   Dkt # 81   Filed 12/12/13   Page 6 of 9

establish *when* a reasonable person would have become so suspicious that the reasonable person would have investigated, or *what* that reasonable person would have discovered after a reasonable investigation.

Therefore, there are genuine disputes of material fact concerning the Hinaharas' good faith.

### B. Reasonably Equivalent Value

"Value" is property or satisfaction of an antecedent debt. *Hayes*, 916 F.2d at 540; Haw. Rev. Stat. § 651C-3(a). Whether the defendant gave value must be viewed from the perspective of the transferor's creditors. *Hayes*, 916 F.2d at 540. "The primary focus of the reasonable value inquiry must be on whether the transferor . . . received reasonably equivalent value, not on whether the defendants gave reasonably equivalent value to someone else." *Field v. Marumoto (In re Maui Indus. Loan & Finance Co.)*, No. 12-90015, 2013 WL 1909536, at *2 (Bankr. D. Haw. May 8, 2013) (citing *Hayes*, 916 F.2d 528, 540).

The trustee's motion focused on the issue of good faith and did not deal separately with the question of value. In their opposition, the Hinaharas offered evidence of the value they gave. In his reply, the trustee contested that evidence.

On the current state of the record, there are genuine disputes of material fact about the extent to which the Hinaharas gave value for the transfers.

### III. Prejudgment Interest

The court has discretion to grant prejudgment interest under state law on the fraudulent transfers from the date each transfer was made. *In re Slatkin*, 525

7

F.3d 805, 820 (9th Cir. 2008); *Hayes*, 916 F.2d 528, 541-42 (9th Cir. 1990). Under Hawaii law, "[p]rejudgment interest is an element of complete compensation. Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Kalawaia v. AIG Haw. Ins. Co.*, 90 Haw. 167, 172, 977 P.2d 175, 180 (1999); *see also Molinar v. Schweizer*, 95 Haw. 331, 335, 22 P.3d 978, 982 (2001) (stating that "prejudgment interest compensates for the inevitable litigation delay in being reimbursed for damages incurred"). The purpose of prejudgment interest is to "allow the court to designate the commencement date of interest in order to correct the injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 293, 788 P.2d 833, 838 (1990); *Metcalf v. Voluntary Employees' Benefit Ass'n of Haw.*, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002).

Hawaii state law applies when setting the appropriate interest rate. *See Hayes*, 916 F.2d at 541 ("State law regarding prejudgment interest is applicable via 11 U.S.C. § 544(b)."); *In re Acequia, Inc.*, 34 F.3d at 818 n.4. The trustee should recover pre-judgment interest at the Hawaii rate of 10 percent per annum from the date on which the transfers were made. Haw. Rev. Stat. § 636-16; *Donell*, 533 F.3d at 772; *Eastman v. McGowan*, 86 Haw. 21, 28, 946 P.2d 1317, 1324 (1997).

IV. <u>Conclusion</u>

Partial summary judgment is GRANTED in favor of the trustee on Counts

8

One, Two, and Three of the complaint, except that summary judgment is DENIED on the question whether the Hinaharas have a defense under Haw. Rev. Stat. § 651C-8(a).

The court shall hold a scheduling conference on January 13, 2014, at 9:30 a.m., to select a new trial date. Counsel are directed to meet and confer in the meantime in an effort to select a mutually agreeable trial date and expedite and streamline the trial.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #12-90009   Dkt # 81   Filed  12/12/13   Page 9 of 9